JACKSON, *ex dem.* TUTHILL, *against* DUBOIS.

Though the in-
terest of a mort-
gagee cannot be
sold in execu-
tion, yet he may
maintain an ac-
tion of ejectment
against the
mortgagor, and
those who claim
under him.
A mortgage
not registered,
has a preference
over a subse-
quent judgment
docketed. But
if the land should

THIS was an action of ejectment. The cause was tried at the *Ulster* circuit, before Mr. Justice *Van Ness*, on the 3d *October*, 1808.

The lessor of the plaintiff claimed title to the premises in question, under a purchase made at a sheriff's sale.

At the trial, an *alias fieri facias* was produced, issued out of the *Ulster* common pleas, tested the 20th *September*, 1806, and returnable the first *Tuesday* of *January*, 1807, directed to the sheriff of *Ulster*, and in the usual form, for the sum of 75 dollars debt, and 24 dollars 64 cents da-

be sold by the sheriff under the judgment, prior to the registry of the mortgage, a *bona fide* purchaser at the sheriff's sale, would be protected against the mortgage.

Where *A.* mortgaged his land in 1800, and a judgment was obtained against him and dock- eted in 1801, and the mortgage was afterwards registered in 1802, and the land having been seized under an execution issued on the judgment, the mortgagee attended at the sheriff's sales, in 1806, and bid, without mentioning the mortgage, it was held, that the registry of the mort- gage was notice to all the world, and that the interest of the mortgagee was not affected by his silence, or bidding at the sale, nor could it be defeated by the sale, under the judgment, subsequent to the registry.

mages, against *Tunis Sammons*. Under this execution, the sheriff sold all the right and title of *Tunis Sammons*, to the premises in question, for 204 dollars, to the plaintiff, and executed a deed to him, which was produced. *Cornelius Low* and *Thomas Harris* were both present at the sale, and *Harris* bid twice. *Harris* did not mention that he had any claim to the property, nor did he forbid the sale. A copy of the judgment on which the execution was issued, was produced, bearing date in *July*, 1801. The premises were devised to *Tunis Sammons* by his father.

The defendant produced a bond and mortgage executed by *Tunis Sammons* to *Thomas Harris*, for the premises in question, for securing the payment of 84*l.* dated the 21st *March*, 1800, and registered the 17th *April*, 1802.

It appeared, that in the summer of 1803, *Sammons* and *Harris* made a settlement of their accounts together, in which the money due on the bond and mortgage was included, and a balance of about 400 dollars was found due to *Harris*, who took a lease of the premises from *Sammons*, for ten years, to pay that sum; and that an indorsement was to be made on the bond at the end of every year, of the sum agreed on. The bond and mortgage were understood to be in force.

The defendant produced a lease from *Harris* to him, dated the 28th *March*, 1805, and the lease from *Sammons* to *Harris*, dated the 26th *July*, 1803, was also produced, under a notice given for that purpose.

On this evidence, the judge directed the plaintiff to be called, and nonsuited, with leave to move the court to set the nonsuit aside, and grant a new trial.

A motion was made to set aside the nonsuit, on the following grounds:

1. As the mortgage was not registered at the time the judgment was docketed, it must be postponed, and the judgment first satisfied.

2. That *Harris*, by taking possession of the premises for the first time, in *July*, 1803, and then as a tenant un-

der *Sammons* was estopped from claiming the possession as mortgagee.

3. That as *Harris* was present at the sheriff's sale, and was silent concerning his claim as mortgagee, he is estopped from now setting up the mortgage.

*Hawkins* and *Fisk*, for the plaintiff. 1. The plaintiff, as purchaser at the sheriff's sale, comes in under the judgment, and acquires all the interest which was bound by that judgment. His title refers back to the time of the judgment.* The statute concerning mortgages,† declares, that the mortgage first registered shall have a preference, and that a mortgage not registered, shall not defeat the title or interest of a *bona fide* purchaser. A judgment creditor ought to be considered and treated as a *bona fide* purchaser. His *lien* is perfect. The title of the mortgagee, until the registry, is imperfect. The law gives the *lien* to the judgment creditor, and if at the time it is created, it has a priority to any other incumbrance, that priority ought not to be defeated by any subsequent acts. If the sale of the premises, under the judgment, had been made prior to the registry of the mortgage, there is no doubt that the purchaser would have acquired a valid title. If the mortgage had been registered at the time, the judgment creditor, knowing the existing of the mortgage, would not have relied on his judgment, but have sought for other security.

2. As *Harris* took a lease from *Sammons*, he is estopped from claiming to hold as mortgagee. The plaintiff has a right to avail himself of this estoppel. Every person who becomes interested by act of law, shall be bound by, and may take advantage of, an *estoppel*.‡ Estoppels bind both parties or neither.§ As *Sammons* would not have denied the lease, neither can *Harris*. A man shall always be estopped by his own deed, nor is he permitted to prove any thing in contradiction to his own solemn act.¶ And so far is this principle carried, that if one takes a lease by indenture, of his

* 1 *Johns. Cases*, 85. *Loan officers of Rensselaer* v. *Bull*.
† 24 sess. c 156. L. vol. 1. 480.

‡ *Viner, Estop.* (L. 1.) (A. 2.) *Co. Litt.* 352. a, § 12 *Mod.* 361.

¶ *Bl. Com.* 299. *Co. Litt.* 171. *Plowd. Rep.* 43. 434.

own lands, it shall bind him.[*] So a feoffment enrolled, without livery of seisin, though it has no force to pass the land, yet the feoffor is estopped from saying it was not his deed.[†] If *A.* lease land to *B.* for years, both parties are estopped to say, that the lessor had no title.[‡] If the defendant sets up the mortgage, while the lease is in operation, he must deny that the lessor had authority to make the lease. An *estoppel* which affects the land, runs with it, into whose hands soever the land comes.[§] The legal existence of the lease is incompatible with that of the mortgage ; and the lease being the last security, must supersede and dissolve the mortgage.[¶]

If a mortgagee should accept a lease of the premises from the mortgagor, would he be allowed to set up the mortgage in defence to an action of debt for the rent ?

3. As *Harris* was present at the sheriff's sale, and concealed his mortgage, it must be considered as a fraud on the purchaser.[**] In cases of fraud, courts of law have power to afford relief.[††] If *Harris* meant to have claimed under the mortgage, he ought not to have attended the sale, or have made known his mortgage at the time.

*Sudam*, and *J. Tallmadge*, contra. A purchaser at a sheriff's sale stands in the place of the defendant in the execution, and takes his title.[‡‡] The mortgage was given in *March*, 1800, and the judgment is in *August*, 1801. At the time of the judgment, *Sammons*, as mortgagor, had only an equity of redemption. The judgment could bind no more than the interest of a mortgagor. The execution commands the sheriff to levy on the lands of which the defendant was seised at the time of the judgment. Now, *Sammons* was at that time seised only as mortgagor, and no more than an equity of redemption could be sold under the execution.

A judgment is not a *lien*, nor can it affect purchasers or mortgagees, until the roll is filed, and the judgment docketed.[§§] A mortgage is a better security. It is an immediate *lien*, and, though unregistered, this *lien* cannot be defeated

NEW-YORK,
May, 1809.

Jackson
v.
Dubois.

[*] *Viner, Estop.* (K.) *Woodfall*, 207. (2d edit.)
[†] *Viner, Estop.* (A.)
[‡] *Co. Litt.* 47. *Viner, Estop.* (N.) 2 Ld. Raym. 1051. *Shepherd's Touch.* 52.
[§] 1 *Salk.* 276. 3 *Term Rep.* 371.
[¶] *Poph. Rep.* 8.

[**] 1 *Bro. C. C.* 63. 1 *Fonbl.* 161. 2 *Johns. Rep.* 589. *Roberts on Frauds,* 131.
[††] *Doug.* 21.

[‡‡] 1 *Johns. Cases,* 150.

[§§] 24th sess. c. 105. vol. 1. p. 988.

by a subsequent judgment. This is manifest from the provisions of the statute.

2. The doctrine of *estoppel* is not applicable to the present case. The lessor is a mere speculating purchaser, five years after the mortgage was duly registered. The paper which has been introduced as a lease, is nothing more than an agreement as to the annual value of the land, of which the mortgagee took possession. The mortgage was in full force at the time. It was proper to fix the annual value of the land, in order that it might be applied to the payment of the bond and mortgage. By the mortgage, *Harris* acquired a fee-simple at law, and if he took a lease, the greater estate would not be merged.

*Johnson v. Sturg*, 2 Johns. *Rep.* 510.

3. The registry of a mortgage is notice to all the world.* The sale was long subsequent to the registry ; *Harris*, therefore, cannot claim the protection of a *bona fide* purchaser, without notice. He is a purchaser with full notice. He, no doubt, speculated, upon the supposition, that the judgment would prevail against the mortgage. *Harris*, by attending the sale and bidding, could not deceive the plaintiff, because the interest to be sold was no more than that of a mortgagor, and the mortgagee had a right to become the purchaser. There is no pretence for the suggestion of a legal or constructive fraud, arising from the silence of *Harris*, when the mortgage had been duly registered for several years.

SPENCER, J. delivered the opinion of the court. The plaintiff having been nonsuited at the trial, has moved to set it aside. The facts are briefly these : *Cornelius Low* obtained a judgment, in the common pleas of *Ulster*, against *Tunis Sammons*, which was docketed on the 5th of *August*, 1801. An execution was issued on this judgment, dated the 28th *September*, 1806, and a sale was made by the sheriff thereon, of the premises in question, to the lessor of the plaintiff, and a deed was given on the 10th of *March*, 1807. *Sammons's* title to the premises on the 21st of *March*,

1800, was unquestioned. On that day, he executed a mortgage to *Thomas Harris*, of the premises, to secure the payment of 210 dollars, payable 1st *April*, after date. This mortgage was registered the 17th of *April*, 1802. At the sheriff's sale, *Harris* appeared and bid several times, and gave no notice of his mortgage, nor did he forbid the sale. On the 26th of *July*, 1803, *Sammons* gave a lease to *Harris* of the premises, for ten years, to secure the payment of a balance of 400 dollars, due him from *Sammons*, and one-tenth of this balance was to be indorsed every year on the bond accompanying the mortgage ; when this agreement was made, both parties talked of the bond and mortgage being in force.

A mortgagee is considered at law, and for certain purposes, as the owner of the estate. It has been decided in this court, that his interest cannot be sold on execution,* because it cannot be separated from the debt ; and it has been considered as a security for money. Still, however, it cannot be denied, that the mortgagee has the title, so far as to enable him to maintain an ejectment on the mortgage, not only against the mortgagor, but against such as derive title under him, subsequent to the mortgage. The 2d section of the statute concerning mortgages,† gives priority, in case of several mortgages, of the same premises, to the first registered ; and it provides that no mortgage shall defeat or prejudice the title or interest of any *bona fide* purchaser, unless the same be duly registered, according to the provisions of the statute. Before this statute, there was no necessity of registering mortgages ; they would have stood upon the same footing as any other *lien* on real property. Since the statute, they must be registered, or lose their priority, as to junior mortgages, and be liable to be defeated, in case of a *bona fide* purchaser, prior to the registry. There is nothing in the statute which gives a preference to a judgment docketed over an unregistered mortgage. The judgment being by act of law, does not destroy the *lien* acquired by an unregistered mortgage, nor gain a preference

* *Ante*, p. 41. *Jackson* v. *Willard*.

† 1 vol. *R. L.* 481.

over it. Should the mortgagee permit a sale to take place, prior to the registry, then, in my opinion, the vendee of the sheriff would be protected from the mortgage, and it would lose its priority. In the present case, the mortgage to *Harris* had been registered nearly five years prior to the sheriff's sale. The mortgage being prior to the judgment, and the registry long before the sale, *Harris* had the legal title to the premises, and the lessor of the plaintiff must be deemed to have had notice of the mortgage when he purchased.

There is no weight in the objection, that by *Harris's* bidding at the vendue, he ought to be estopped from disputing the title of the purchaser at that sale. *Sammons* had a vendible interest in the premises, the equity of redemption. *Harris's* bidding, when he had a right to presume every one who bid knew of his mortgage, is not irreconcileable with the situation in which he stood as mortgagee.

The suggestion, that by the arrangement which took place between *Harris* and *Sammons*, the mortgage was surrendered, is inconsistent with their declared intentions, and is contradicted by the lease itself; for by that, the existence of the bond and mortgage is recognised. I am satisfied, that the nonsuit was correctly ordered, and that the plaintiff can take nothing by his motion.

Rule refused.